IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS A. TRUXAL,                    )
                                      )
                   Petitioner,        )
                                      )
     vs.                              )     Case No. 2:08-cv-00934
                                      )
DISTRICT ATTORNEY OF                  )     Chief Magistrate Judge Amy Reynolds Hay
WESTMORELAND COUNTY,                  )
THE ATTORNEY GENERAL OF THE           )
STATE OF PENNSYLVANIA, and            )
SUPT. ROBERT SHANNON,                 )
                                      )
                   Respondents.       )


## <u>MEMORANDUM OPINION AND ORDER</u>[1]

On February 7, 2000, Douglas A. Truxal, a state prisoner, pleaded guilty to a host of

charges in connection with his sexual abuse of a then under 16 year old girl who had mental

disabilities.  In addition, he pleaded guilty to intimidation of a witness or victim in connection

with letters he wrote to the victim, threatening her to not testify against Petitioner.  Petitioner's

convictions resulted in an aggregate sentence of seven to fourteen years, which Petitioner is

currently serving.   Waiting until June 30, 2008, Petitioner filed a habeas petition pursuant to 28

U.S.C. § 2254, seeking to attack those convictions.   Because Petitioner failed to file his habeas

petition within one year of his conviction becoming final, his petition is time barred.  In the

alternative, he has procedurally defaulted his claims because he failed to file a direct appeal.  In

the alternative, the petition is meritless.

### Factual and Procedural History

---

[1]  All currently interested parties have consented to have the Magistrate Judge exercise
plenary jurisdiction and enter final judgment.  Dkt. [15] (District Attorney); Dkt. [19]
(Petitioner).

Petitioner faced three sets of charges.  At Criminal Information No. 407C1999, he faced charges of statutory sexual assault, involuntary deviate sexual intercourse with a person under 16 years of age, aggravated indecent assault, indecent assault, corruption of minors and conspiracy to corrupt minors.  State Court Record ("SCR"), No. 407C1999 at Dkt. No. 1.  The second set of charges were filed at Criminal Information 5000C1998, charged Petitioner with stalking with intent to cause emotional distress and loitering and prowling at night near the victim's home.  SCR, No. 5000C1998 at Dkt. No. 1.   The third set of charges filed at Criminal Information No. 4027C1999, charged Petitioner with 3 counts of Intimidating Witness/Victim into giving false misleading testimony and three counts of Intimidating Witness/Victim into withholding information.  SCR, No. 4027C1999 at Dkt. No. 1.  Petitioner was arrested on at least the first set of charges on or about November 9, 1998 and confessed to the sexual abuse of the victim.  Confronted by the prospect of the confession being introduced at trial, as well as the testimony of the victim and others to whom Petitioner had confided that he did in fact abuse the victim, Petitioner changed his mind and decided to plead guilty just as the jury was being selected for trial.  On February 7, 2000, Petitioner was sentenced to serve 7 to 14 years of incarceration for all of the crimes he pleaded guilty to even though he faced a maximum sentence of 63 years just for Information Nos. 407C1999 and 5000C1998.  SCR, Transcript of Guilty Plea at p. 25.  Petitioner did not file a direct appeal.

Thereafter, Petitioner filed a pro se PCRA petition on February 9, 2001.  SCR for No. 5000C1998,  No. 19.  That pro se PCRA petition raised the following issues:

> My attorney was ineffective for his failure and/or refusal to adequately investigate the circumstances surrounding my case.  My attorney was ineffective for his failure and/or refusal to gather and/or present requested tangible evidence

> that would have proved my innocence beyond  any doubt.  My attorney was ineffective for his failure and/or refusal to locate, contact and/or subpoena all of my (verbally and written) requested witnesses. My attorney was ineffective for his insistence that I plead guilty, as opposed to a costly trial, he said, and which would inconvenience and embarrass too many people as well as that I would only get found guilty anyway, regardless of the amount of evidence that I presented.

SCR, No. 5000C1998 at No. 19, p. 3 of the PCRA petition.  Counsel in the person of Attorney

Ceraso was appointed in March 2001.  In March 2002, Attorney Ceraso moved to withdraw due

to irreconcilable differences with Petitioner and on April 15, 2002, new counsel in the person of

Attorney McCormick was appointed to represent Petitioner.  SCR, No. 5000C1998 at No. 24.  In

October 2002, Attorney McCormick was granted leave to withdraw.  SCR, No. 5000C1998 at

No. 26.  In October 2002, Attorney Avolio was then appointed to represent Petitioner in the

PCRA proceedings.  SCR, No. 5000C1998 at No. 27.  After being granted extensions of time,

Attorney Avolio filed a no-merit letter, which apparently is not in the state court record.

Thereafter, on April 10, 2003, the PCRA Court, which was also the sentencing court, filed an

opinion and notice of intent to dismiss (dated April 5, 2003) the pro se PCRA petition[2] given that

no counseled amended petition was ever filed in light of the fact that Attorney Avolio wrote the

no-merit letter indicating that the issues raised in the pro se PCRA petition had no merit.    The

PCRA court dismissed the pro se PCRA petition on May 28, 2003.

Petitioner filed a pro se appeal.  Thereafter, he was ordered by the PCRA court to file a

Statement of Matters complained of on appeal.  SCR, No. 5000C1998 at No. 36.  The PCRA

court filed its response to the Petitioner's Statement of Matters Complained of On Appeal,

indicating that the opinion the PCRA court filed on April 10, 2003 was an adequate response to

---

[2]  SCR, No. 5000C1998 at No. 31.

Petitioner's Statement of Matters Complained of On Appeal.  SCR, No. 5000C1998 at No. 36.

Petitioner filed an appellate brief, wherein he again raised the sole issue that his trial/guilty plea counsel was ineffective for "not present[ing] witnesses in your petitioner[']s defence, so vital that if their testimony would of [sic] been heard by the court, any reasonable minded judge or jury would of [sic] 'dismissed all charges against your petitioner, or at the very least would of [sic] found your petitioner guilty of a far lesser offence, and sentenced your petitioner to a far lesser sentence then [sic] presently imposed upon your petitioner.'"  SCR, No. 5000C1998 at No. 37.  On June 14, 2004, the Superior Court affirmed the PCRA Court's denial of relief.  SCR, No. 5000C1998 at No. 45.  Petitioner did not file a Petition for Allowance of Appeal ("PAA") to the Pennsylvania Supreme Court.

In the interim, while Petitioner's appeal to the Superior Court was pending, Petitioner filed a second pro se PCRA petition on August 23, 2004.  SCR, No. 4027C1999 at No. 32.  In that second PCRA petition, he raised the following claim, as summarized by this Court: Petitioner's Miranda rights were violated when the police questioned him without providing him his Miranda rights, and only after receiving incriminating statements from Petitioner, did the police give Petitioner his Miranda rights and tape record his confession.  The PCRA court issued a notice of intent to dismiss the second PCRA petition because it did not meet the requirements of Commonwealth v. Lawson, 549 A.2d 107 (Pa.Super. 1988) and/or Commonwealth v. Blackwell, 558 A.2d 1077 (Pa.Super. 1989) and because the second PCRA petition was time barred.  SCR, No. 4027C1999 at No. 33.   Petitioner filed his response to the PCRA court's notice of intent to dismiss the second PCRA petition.  SCR, No. 4027C1999 at No. 34.   The PCRA court dismissed the second PCRA petition on October 20, 2004.  SCR, No. 4027C1999 at

4

No. 37.

Petitioner attempted to file an appeal.  SCR, No. 4027C1999 at No. 38.  However, because Petitioner neither paid the filing fee nor sought IFP status, the Superior Court's prothonotary wrote on November 23, 2004,  to the Common Pleas County Clerk's office and carbon copied Petitioner, informing the County Clerk, that when Petitioner rectifies the shortcomings, to again forward the appeal to the Superior Court.  SCR, No. 4027C1999 at No. 39.  On December 13, 2004, Petitioner wrote a letter to the Common Pleas County Clerk's Office asking what the filing fees were for the appeal and indicating a willingness to pay up to $10.00 for the filing fee.  SCR, No. 4027C1999 at No.  40.  The County Clerk's Office wrote back to Petitioner on January 20, 2005,  indicating that the entire filing fee would be $115.00.  SCR, No. 4027C1999 at No. 41.  From the state court record, nothing further appears to have transpired with regard to the appeal.  The next thing occurring on the docket was that on June 11, 2008 a letter from Petitioner was filed with the County Clerk's Office requesting copies of the dockets sheets.  SCR, No. 4027C1999 at No. 42.

On June 30, 2008, Petitioner executed the current pro se Section 2254 habeas petition, Dkt. 7, and a brief in support.  Dkt. [8].   In the habeas petition, he raised the following issues:

GROUND ONE: Violation of due process under the 5th and 14th amendments . . . Police conducted a[n] interrogation of Petitioner and obtained statements from petitioner in violation of his Miranda rights.

[Dkt. [7] at 5]

GROUND TWO: Due process violation under the 14th Amendment . . . .   The plea of guilty was unlawfully induced, involuntarily and unknowingly entered.

[Id., at 6]

GROUND THREE: Sixth (6th) Amendment violation . . . . Guilty Plea counsel
was ineffective for 1.  Failing to Investigate the case[;] 2.  Failing to call
witnesses[;] 3.  Inducing Petitioner to enter a guilty plea against his will.

Id., at 8.

After being granted an extension of time in which to file an answer, the Respondents filed

their answer, wherein they raised the following defenses: (1) the petition is time barred; (2) the

claims are procedurally defaulted; and (3) the claims are meritless.  The Respondents also caused

the original state court records to be transmitted to this Court.  Petitioner did not file a traverse.

**Applicable Legal Standards**

**A.  AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I,

§101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in

federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996.  Because

petitioner's habeas petition was filed in the year 2008, AEDPA is applicable to this case.  Werts

v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000) ("Since Werts filed his habeas petition on March

18, 1997, after the effective date of the AEDPA, we are required to apply the amended standards

set forth in the AEDPA to his claim for federal habeas corpus relief.") (footnote omitted).

**B.  Statute of Limitations**

Generally AEDPA requires that state prisoners file their federal habeas petition within

one year of any of four enumerated events:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State court.
The limitation period shall run from the latest of--
  (A) the date on which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State
action in violation of the Constitution or laws of the United States is removed, if
the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by
the Supreme Court, if the right has been newly recognized by the Supreme Court
and made retroactively applicable to cases on collateral review;  or

(D) the date on which the factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post- conviction
or other collateral review with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of limitation under this
subsection.

28 U.S.C. § 2244(d).

Although a habeas respondent has the burden of affirmatively pleading AEDPA's statute

of limitations, Hill v. Braxton, 277 F.3d 701, 705 (4ᵗʰ Cir. 2002), it is appropriate, where, as here,

the habeas petitioner has been put on notice of a statute of limitations issue, to place some burden

on the habeas petitioner to show why some date other than the date of the conviction becoming

final should be used to calculate the running of the statute of limitations.  See, e.g., Smith v.

Duncan, 297 F.3d 809, 814 (9ᵗʰ Cir. 2002) ("once a petitioner is given adequate notice and

opportunity to respond to allegations that his petition is subject to dismissal pursuant to

AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"),

abrogation on other grounds recognized in, Moreno v. Harrison, 245 Fed.Appx. 606 (9ᵗʰ Cir.

2007); Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11ᵗʰ Cir. 2002);

Robinson v. Johnson, 313 F.3d 128, 134-135 (3d Cir. 2002) ("The purpose of requiring the

defendant to plead available affirmative defenses in his answer is to avoid surprise and undue

prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the

affirmative defense should not succeed.").

It is appropriate to place at least some burden of pleading and production on a habeas petitioner to show that the date for the running of the AEDPA limitations period should start from either the date a State created impediment was removed (28 U.S.C. § 2244(d)(1)(B)) or start from the date on which a factual predicate could first have been discovered (28 U.S.C. § 2244(d)(1)(D)).   See  Jackson v. Secretary for Dept. of Corrections, 292 F.3d at 1349 ("Because Jackson did not assert that a government-created impediment to his filing existed, that he based his claims on a right newly recognized by the Supreme Court, or that the facts supporting his claims could not have been discovered through due diligence before the filing of this petition, the statute of limitations must be measured from the remaining trigger, which is the date on which his conviction became final.").   Thus, once a habeas petitioner has been put on notice of the affirmative defense of AEDPA's statute of limitations, the petitioner bears the burden of producing some evidence and/or persuading the court as to why the date for the start of AEDPA's limitations period is other than the date the conviction became final or producing some evidence and/or persuading the court as to why the statute of limitations has not run.

In addition, to the extent that Petitioner seeks to equitably toll AEDPA's statute of limitations, he bears a heavy burden.  Equitable tolling can apply to AEDPA's statute of limitations.  Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616 (3d Cir. 1998). However, the court cautioned in Miller about the limited nature of equitable tolling:

> equitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair." Shendock, 893 F.2d at 1462. Generally, this will occur when the petitioner has "in some extraordinary way ... been prevented from asserting his or her rights." Oshiver, 38 F.3d 1380.  The petitioner must show that he or she "exercised reasonable diligence in investigating and bringing [the] claims." New Castle County, 111 F.3d at 1126. Mere excusable neglect is not sufficient.  See Irwin v. Department of Veterans

<u>Affairs</u>, 498 U.S. 89, 96 (1990); <u>New Castle County</u>, 111 F.3d at 1126.

<u>Id</u>. at 618-19.  Put succinctly, a habeas petitioner seeking to invoke the doctrine of equitable

tolling must establish "extraordinary circumstances." <u>Sandvik v. United States</u>, 177 F.3d 1269,

1271 (11th Cir. 1999)("Equitable tolling is appropriate when a movant untimely files because of

extraordinary circumstances that are both beyond his control and unavoidable even with

diligence."), *reh'g and suggestion for reh'g en banc denied*, 207 F3d 666 (11th Cir. 2000).  In

order "[t]o establish the extraordinary circumstances necessary to equitably toll the AEDPA's

statute of limitations, a habeas petitioner must prove that the cause of his delay was both beyond

his control and unavoidable even with diligence." <u>Simmons v. Yukins</u>, No. Civ. 01-CV-71287-

DT, 2001 WL 739505, at *2 (E.D. Mich. May 9, 2001).  <u>See also</u> <u>Pace v. DiGuglielmo</u>, 544

U.S. 408, 418 (2005)("Generally, a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way.").  Moreover, "the party seeking equitable tolling

must have acted with reasonable diligence throughout the period he seeks to toll." <u>Warren v.</u>

<u>Garvin</u>, 219 F.3d 111, 113 (2d Cir. 2000)(quoting <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir.

2000)).  Lastly,  it is petitioner's burden to plead and prove entitlement to equitable tolling.  <u>See</u>,

<u>e.g.</u>, <u>Polk v. Cain</u>, No. Civ. A. 00-3026, 2001 WL 736755, at *9 (E.D. La. June 23, 2001)("A

person seeking the tolling of the statute of limitations period has the burden of showing

circumstances exist that justify tolling."); <u>Balagula v. United States</u>, 73 F.Supp.2d 287, 291

(E.D.N.Y. 1999)("The burden lays with the petitioner to establish the entitlement to equitable

tolling."); <u>Turner v. Singletary</u>, 46 F.Supp.2d 1238, 1243 (N.D. Fla. 1999)("The burden is upon

the petitioner to show that equitable tolling is warranted.").

9

The Court of Appeals for the Second Circuit has explained the importance of AEDPA's statute of limitations. <u>Acosta v. Artuz</u>, 221 F.3d 117, 123 (2d Cir. 2000). In <u>Acosta</u>, the Court of Appeals declared that

> The statute of limitation in Section 2244(d) "was Congress' primary vehicle for streamlining the habeas review process and lending finality to state convictions." *Walker v. Artuz*, 208 F.3d 357, 361 (2d Cir. 2000); *cf. Schlup v. Delo*, 513 U.S. 298, 322 (1995) (stating that on collateral review, courts should "accommodate [ ] ... the systemic interests in finality ... and conservation of judicial resources"). The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to habeas review of state court judgments, the statute of limitation implicates the interests of both the federal and state courts, as well as the interests of society[.]

<u>Acosta v. Artuz</u>, 221 F.3d at 123. <u>Accord</u> <u>Hill v. Braxton</u>, 277 F.3d 701, 706 (4th Cir. 2002) ("The one-year limitations period ... promotes judicial efficiency and conservation of judicial resources safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time.")(internal citations omitted).

**Discussion**

The Respondents contend that the instant petition is untimely because it was not filed within one year of Petitioner's conviction becoming final. The Respondents are correct.

Petitioner was sentenced on all of the crimes on February 7, 2000. Under state law, Petitioner had until 30 days thereafter in which to file his appeal. Pa.R.A.P. 903(c)(3) ("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court."). Because

Petitioner filed no post sentence motion and took no appeal from the judgment of sentence, Petitioner's conviction became final 30 days after February 7, 2000 which is March 8, 2000. See, e.g.,  Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); Kapral v. United States, 166 F.3d 565, 575, 577 (3d Cir. 1999); Woolfolk v. Mechling, No. Civ.A. 02-7211, 2003 WL 22837608, at *4  (E.D. Pa. Nov. 25, 2003)("Direct review of Petitioner's conviction ended on November 20, 1998, since Petitioner did not appeal his guilty plea within thirty days of the sentencing.").

Hence, Petitioner would have had until March 8, 2001, in which to file his habeas petition.  Petitioner did not file the present habeas petition until, at the earliest, June 30, 2008, the date whereon he signed his habeas petition.[3]  While it is true that a properly filed post conviction or collateral petition that was filed and/or pending would have tolled the running of the limitations period,[4] Petitioner did not file his first PCRA petition until February 9, 2001. Hence, between March 8, 2000 (the day his conviction became final) and February 8, 2001, the day before he filed his PCRA petition,[5] a total of 337 days of the 365 days of AEDPA's one year

---

[3]  The court will deem the date of the filing to be the date Petitioner signed his habeas petition. The so called "prisoner mail box rule" provides that "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  Burns v. Morton, 134 F.3d 109, 113 (3d Cir 1998); United States v. Soto, 159 F.Supp.2d 39, 45 (E.D. Pa. 2001).  Absent proof of the exact date of delivering the habeas petition to the prison authorities, the court will treat the date whereon Petitioner signed his habeas petition as the filing date.  Rhodes v. Senkowski, 82 F.Supp.2d 160, 165 (S.D.N.Y. 2000) ("Absent evidence to the contrary, the Court assumes that Rhodes gave his petition to prison officials for mailing on the date he signed it, February 9, 1998."); Hudson v. Martin, 68 F.Supp.2d 798, 799, n.2 (E.D. Mich. 1999), aff'd, 8 Fed.Appx. 352 (6th Cir. 2001).

[4]  See 22 U.S.C. § 2244(d)(2); Bennet v. Artuz, 199 F.3d 116, 119-22 (2d Cir. 1999), aff'd, 531 U.S. 4 (2000).

[5]  Because as of February 9, 2001, Petitioner filed his first PCRA petition and hence, the PCRA petition is deemed to have been pending for at least a part of that day, the AEDPA statute of limitations

(continued...)

limitations period were consumed,[6] leaving only 28 days remaining on the AEDPA limitations

period.  The first PCRA petition remained pending (and so tolled AEDPA's statute of

limitations) only until 30 days after June 14, 2004, the date whereon the Superior Court in the

PCRA proceedings affirmed the PCRA trial court's denial of relief since no PAA was filed

thereafter.  Swartz v. Meyers, 204 F.3d 417, 420 (3d Cir. 2000) (the one year limitation period

continues to be tolled during the period permitted by state law for the taking of a timely appeal

from the denial of post-conviction relief even if no appeal is taken);  Mattis v. Klopotoski, Civ.A.

07-1837, 2008 WL 2909859, at * 3 (E.D.Pa., July 28, 2008)("That petition remained pending

until December 8, 2006, when the time expired for Mattis to seek review in the Pennsylvania

Supreme Court. See Pa. R.A.P. 1113(a) (allowing 30 days for the filing of an allocatur petition);

Swartz v. Meyers, 204 F.3d 417, 421-22 (3d Cir. 2000) (state collateral petition is pending

through the time for seeking an appeal).");  Young v. Lawler, CIV.A. 07-4171,  2008 WL

1984059, at *4 (E.D.Pa. May 2, 2008) (the 30 day period for filing allocatur to Pennsylvania

Supreme Court tolled the running of AEDPA's statute of limitations even if no allocatur petition

was filed).  Thirty days after June 14, 2004 is July 14, 2004.

Hence, the AEDPA one year statute of limitations began to run again as of July 15, 2004,

the first day when the first PCRA petition was no longer deemed pending and hence no longer

---

[5](...continued)
was tolled as of that date, i.e., not counted.  See Freeman v. Pew, 59 F.2d 1037, 1037 (D.C. Cir. 1932)
("it has long been the settled doctrine that the law, disregarding fractions, takes the entire day as the unit
of time.");  In re Susquehanna Chemical Corp., 81 F.Supp. 1, 9 (W.D. Pa. 1948)(general rule is that
fractions of a day are to be disregarded), aff'd, 174 F.2d 783 (3d Cir. 1949).

[6] For purposes of AEDPA's one year statute of limitations, a "year" means 365 days.  See
Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001); Stokes v. Miller, 216 F.Supp.2d 169 (S.D.N.Y.
2000).

tolled the AEDPA statute of limitations.

Thus, AEDPA's statute of limitations began to run again on July 15, 2004 and ran out 28 days later on August 12, 2004.   Again, Petitioner did not file the instant habeas petition, until at the earliest, June 30, 2008, nearly four years later.  Hence, from August 12, 2004 (i.e., the date the one year statute of limitations ran out) to June 30, 2008, the date whereon he signed the habeas petition, another 1,418 days passed.  Adding that 1,418 days to the 337 days that passed prior to August 12, 2004, yields a result of 1755 total days passed between the conviction becoming final and the filing of the instant habeas petition excluding all statutorily tolled time.[7]

Despite the Respondents raising the AEDPA's statute of limitations and arguing that the instant petition was filed more than one year after Petitioner's conviction became final, Petitioner did not file a traverse arguing otherwise.  Hence, we find that Petitioner failed to carry his burden to show why some date other than the date his conviction became final should start that AEDPA

---

[7]  It will be recalled that Petitioner filed a second PCRA petition on August 23, 2004.  However, this is of no legal significance for at least two reasons.  First, by the time the second PCRA petition was filed, the one year AEDPA statute of limitations had already run.  See, e.g., Cordle v. Guarino, 428 F.3d 46, 48 n.4 (1st Cir. 2005)("Under 28 U.S.C. § 2244(d)(2), 'the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted' toward the one-year limitations period. However, Cordle's motion for a new trial was not filed until November 11, 2000, several years after her AEDPA limitations period had already expired. 'Section 2244(d)(2) only stops, but does not reset, the [AEDPA] clock from ticking and cannot revive a time period that has already expired.'").  Second, even if the second PCRA petition were filed before the AEDPA statute of limitations had run out, such would not render this habeas petition timely.  It is true that a properly filed PCRA petition, including this second PCRA petition, could, if it had been filed prior to the running out of the AEDPA statute of limitations, toll AEDPA's statute of limitations.  However, because the State PCRA court held the second PCRA petition to be time barred under the PCRA statute of limitations, the second PCRA petition cannot qualify as a "properly filed" petition for post collateral review within the meaning of 28 U.S.C. 2244(d)(2).  Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005)(if state finds the post conviction petition untimely filed, it is not "properly filed" for AEDPA's statutory tolling provision); Merritt v. Blaine, 326 F.3d 157, 159 (3d Cir. 2003) ("We hold that an untimely application for state post-conviction relief by a petitioner, who sought but was denied application of a statutory exception to the PCRA's time bar, is not 'properly filed' under 28 U.S.C. § 2244(d)(2).").

statute of limitations and we find that he failed to carry his heavy burden to show entitlement to equitable tolling throughout the entire time he needed to have tolled.

While Petitioner does state in a conclusory fashion in his habeas petition that he is entitled to "statutory and equitable tolling," Dkt. [7] at 13, ¶ 18, Petitioner offers no facts and no arguments in support of such claimed entitlement.  Hence, we find he fails to carry his burden to persuade the Court of any entitlement to either statutory (other than for the pendency of the first PCRA petition) or equitable tolling.

Accordingly, the petition is time barred and should be dismissed as such.

In the alternative, we find that at least one of the three claims is procedurally defaulted. Namely, we find Ground One (the Miranda claim) to have been procedurally defaulted.  We recall that Petitioner only raised this claim in his second PCRA petition which was found by the PCRA court to have been time barred.  The PCRA statute's time bar is independent and adequate and hence, Petitioner has committed a procedural default of his Miranda claim.  Banks v. Horn, 49 F.Supp.2d 400 (M.D. Pa. 1999)(holding that the State Supreme Court's refusal to consider a death sentenced PCRA petitioner's claims because his PCRA petition was untimely, constituted a procedural default barring federal habeas review and that the PCRA's statute of limitations and its application by the state Courts were independent and adequate); Catanch v. Larkins, No. 98-85, 1999 WL 529036 (E.D. Pa.  July 23, 1999)(holding certain claims which were not otherwise exhausted had been procedurally defaulted because the claims could not be brought under a second PCRA petition as that petition would be time barred and that the state courts apply the PCRA statute of limitations consistently, thus rendering it an adequate and independent state law ground).  Furthermore, Petitioner committed a second procedural default by failing to file an

effective appeal of the PCRA court's holding that the second PCRA petition was time barred. See, e.g., Pelzer v. Vaughn, No. Civ.A. 92-0091, 1992 WL 95915, at *5 (E.D. Pa. April 16, 1992) ("If an issue has once been raised [in the state court of first instance], but was not pursued to the higher courts, it is deemed waived, and further litigation on that issue will not be heard [in a federal habeas court] unless a petitioner can demonstrate cause and actual prejudice, or show that failure to consider the claims would result in a fundamental miscarriage of justice."); Terry v. Gillis, 93 F.Supp.2d 603, 611 (E.D. Pa. 2000)("Thus, because plaintiff failed to present both his claim regarding the jury charge and his claim that counsel was ineffective for not objecting to that charge to the Pennsylvania Superior Court and the Pennsylvania Supreme Court, his claims are procedurally defaulted"); Diventura v. Stepniak, No. 95-CV-0443, 1996 WL 107852, at *3 (E.D. Pa. March 11, 1996).

Lastly, Petitioner fails to allege, as is his burden,[8] either cause or prejudice for the procedural defaults, or a miscarriage of justice.[9] Nor, on this record, is there any apparent basis

---

[8] See Songer v. Wainwright, 733 F.2d 788, 792 (11th Cir. 1984)("The district court properly held that because defendant **alleged** neither cause nor prejudice, he is now barred from raising these claims.") (emphasis added), reh'g en banc granted and opinion vacated by, 758 F.2d 552 (11th Cir. 1985), opinion reinstated by, 769 F.2d 1497 (11th Cir. 1985); Elrich v. McCullion, 861 F.2d 720 (Table), 1988 WL 119461, at *1 (6th Cir. 1988)("petitioner was required to allege cause and prejudice to excuse his procedural default. See Engle v. Isaac, 456 U.S. 107 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977). Because petitioner has failed to allege cause and prejudice, the district court was precluded from reviewing his claims."); Simpson v. Jones, 238 F.3d 399 (6th Cir. 2000).

[9] Simpson v. Sparkman, 172 F.3d 49 (Table), 1998 WL 869967, at *4 (6th Cir. 1998) ("Therefore, the burden is on the defendant at this stage to make 'a colorable showing of factual innocence' in order to be entitled to the 'fundamental miscarriage of justice' exception"); Cross v. Cody, 25 F.3d 1056 (Table), 1994 WL 164592, at *2 (10th Cir. 1994) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate the failure to consider the claims will result in a fundamental miscarriage of justice.").

for excusing the procedural defaults.  Accordingly, having procedurally defaulted the <u>Miranda</u>

claim, this claim must be dismissed without being addressed on the merits.

In the alternative, the two other issues of guilty plea counsel's alleged ineffectiveness,

i.e., Grounds Two and Three,[10]  are found to be meritless under AEDPA.

Petitioner raised the issue of guilty plea counsel's alleged ineffectiveness in his first pro

se PCRA petition.  The PCRA trial court addressed the issue of guilty plea counsel's alleged

ineffectiveness as follows

> The record is devoid of any evidence that defense counsel failed to
> investigate petitioner's case.  Defense counsel was prepared for trial.  The case
> was called for trial and the process of selecting a jury has [sic] begun just prior to
> petitioner's decision to plead guilty.  He was sentenced to a lower term of
> imprisonment than that sought by the District Attorney or that would have been
> given in the event of a conviction.  During his guilty plea colloquy, the defendant
> acknowledged he understood h is [sic] rights and decision to plead guilty.
> Defendant was explicitly questioned as to his satisfaction with counsel, and if he
> had adequate time to discuss his charges and possible defenses he might have with
> his lawyer.  He assured this court that he was satisfied.  (G.P.C.  p. 17) . . . .
> Mr. Avolio's [i.e., PCRA counsel's no-merit] letter also mentions that a
> Commonwealth witness had come forth after the guilty plea and changed their
> story.  While recanted testimony may form a basis for relief, such testimony
> inherently embodies a diminished degree of reliability.  It must be such that would
> compel a different outcome at trial.  <u>Commonwealth v. Williams</u>, 557 Pa. 207,
> 230, 732 A.2d 1167, 1179 (1999).  In the present case, the Commonwealth would
> have presented the testimony of the victim, multiple witnesses and a lawful
> confession of petitioner.  Clearly, there was overwhelming evidence against
> defendant, and it is unlikely the recanted testimony would change the result.

---

[10]  While Petitioner phrases Ground Two as a direct claim of violation of his due process rights
by claiming that his guilty plea was unlawfully induced by his plea counsel, we note that this precise
issue of the due process violation was never raised in a direct appeal and hence would itself be waived
under state law and procedurally defaulted for federal habeas purposes.  Thus, the only way this claim
would have been cognizable in the state courts in the first PCRA petition would be via a claim of
ineffectiveness of his guilty plea counsel, which is the precise claim he made in his first PCRA petition
and which the PCRA court addressed on the merits and which this Court likewise will address on the
merits, given that he procedurally defaulted this due process claim for federal habeas purposes and he did
not argue for cause and prejudice so as to excuse this procedural default, nor did he argue a miscarriage
of justice so as to excuse the procedural default.

SCR, No. 5000C1998 at Dkt. 31, p. 2 of the slip op.

The Superior Court affirmed, reasoning as follows:

In his PCRA petition, appellant has argued that his trial counsel was ineffective because trial counsel: (1) failed or refused to investigate the case, (2) failed or refused to present tangible evidence, (3) failed to contact witnesses, and (4) insisted that appellant plead guilty.  Appellant's statements are generalized and do not specify how his counsel prejudiced him.  To sustain his argument, appellant must demonstrate

> that the underlying claim is of arguable merit, counsel's course of action lacked any reasonable basis for advancing his client's interests, and Appellant has suffered prejudice as a result.  Further, to establish ineffectiveness for failing to call witnesses, a defendant must illustrate that counsel knew or should have known of their existence, that the witnesses were prepared to testify for the defense and the testimony was necessary to avoid prejudice.  Prejudice means that if not for counsel's ineffectiveness, there is a reasonable probability that the outcome of the trial would have been different.

*Commonwealth v. Fink*, 791 A.2d 1235, 1249 (Pa. Super. 2002).

Upon receipt of the no-merit letter, the trial court reviewed the PCRA petition and found that there was no evidence to support appellant's contentions that his trial counsel was ineffective.  First, there was no evidence that counsel had failed to  investigate the case.  Second, the trial court further found that counsel was prepared for trial and jury selection had begun when *appellant* decided to enter a guilty plea.  Third, during the guilty plea colloquy, appellant stated that he was satisfied with his counsel's representation.  Moreover, appellant stated "[t] the only reason [he was] pleading guilty [was] so [he wouldn't] take [the victim's family] the rest of the way through [trial]."  N.T. 2/7/2000 at 27. . . . .

Even if appellant had stated his dissatisfaction with his counsel's representation, appellant would still have to demonstrate that his trial counsel failed to interview several witnesses who would have been beneficial at trial.  As stated above, "to establish ineffectiveness for failing to call witnesses, a defendant must illustrate that the witnesses were available, that counsel knew or should have known that of their existence, that the witnesses were prepared to testify for the defense, and the testimony was necessary to avoid prejudice.  *Fink*, 791 A.2d at 1249.  In this case, appellant did not provide any signed affidavits or other evidence that the alleged witnesses were available or were willing to testify at the time of trial. Moreover, appellant does not name the alleged witnesses in his PCRA petition in an effort to demonstrate that such witnesses even exist, let alone that his counsel was aware of their existence.

Appellant additionally asserts in his brief that he is entitled to a new trial because a Commonwealth witness, Roy Todd Campbell, has recanted his statements to the police.  Appellant claims that Campbell's statements to police induced appellant to plead guilty.  We have reviewed appellant's PCRA petition and nowhere does appellant claim that a witness has recanted his testimony.  This is a court of review and we cannot consider arguments that were not presented to the trial court.

Finally, appellant argues that his counsel was ineffective for failing to obtain an order suppressing use of appellant's statement to police.  Appellant did not address the suppression of his statement in the PCRA petition presented to the trial court.  Moreover, this issue was not raised in appellant's statement of matters complained of on appeal pursuant to Pa.R.A.P. §1925(b).  Therefore, review is precluded.

SCR, No. 5000C1998 at Dkt. 45, pp. 2 to 4.   To the extent that the State Courts addressed his claims of ineffectiveness of plea counsel on the merits, we find that Petitioner has failed to carry his burden to show that the state court's disposition of his claims was contrary to or involved an unreasonable application of then extent United States Supreme Court precedent.  In fact, Petitioner failed to even argue that the State Court's disposition was contrary to or an unreasonable application of Supreme Court precedent as is his burden.  Downing v. Del Papa, 145 Fed.Appx. 578, 580 (9th Cir. 2005)("Downing fails to **argue** how the Nevada Supreme Court's judgment resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States")(emphasis added); Anderson v. Secretary for Dept. of Corrections, 462 F.3d 1319, 1325 (11th Cir. 2006)("Petitioner had not met his burden of showing the state courts' decisions were 'contrary to' or 'an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'");  Sepulveda v. U.S., 330 F.3d 55, 66 (1st Cir. 2003) (AEDPA requires state "petitioners to bear a different burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" ); Peterson v. Krysevig, Civ. A. No. 07-947, 2008 WL 4372940, at *8 (W.D.Pa., Sept. 22, 2008)("it is petitioner's burden to prove the state courts' disposition of a federal claim is either contrary to or an unreasonable application of clearly established federal law.") (citing Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Hence, based on his failure to even argue the AEDPA standards, Petitioner fails to establish entitlement to relief under AEDPA.

To the extent that the state courts refused to address his claims of ineffectiveness on the merits, we find that Petitioner's waiver under state law of his claims of ineffectiveness also constitute a procedural default of his claim for purposes of habeas review.   Furthermore, given that Petitioner failed to even argue cause and prejudice or a miscarriage of justice so as to excuse any procedural defaults, the claims are procedurally defaulted and cannot afford Petitioner relief.

Lastly, because this Court concludes that jurists of reason would not find it debatable whether this petition is time barred and/or whether Petitioner has procedurally defaulted his claims, and/or that some of his ineffective assistance of counsel claims are meritless, a Certificate of Appealability is denied.

An appropriate Order follows:

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 27 January, 2010

cc:     Douglas A. Truxal
        ED8070
        1111 Altamont Boulevard
        Frackville, PA  17931

        Counsel of Record via CM-ECF